SCHADEWALD v BRULÉ

Docket Nos. 177495, 187143. Submitted May 6, 1997, at Grand Rapids. Decided August 15, 1997, at 9:00 A.M.

Frederic H. and Lois K. Schadewald, the owners of a Ross Township lot that is subject to an easement for access to a public highway from adjoining lot 341, brought an action in the Kalamazoo Circuit Court against Phillippe Y. and Sharon J. Brulé (the owners of lot 341 and lot 539, which adjoins the plaintiffs' lot and lot 341) and Ross Township, seeking judicial review of a decision by the Ross Township Board of Zoning Appeals to grant a zoning variance to the Brulés to allow them to build an otherwise nonconforming garage, for which the Brulés would rely on the easement on the plaintiffs' lot for access to the highway, if the Brulés officially joined lots 341 and 539. The plaintiffs also sought injunctive relief against the Brulés' use of the easement on the plaintiff's property for highway access from lot 539. The court, John F. Foley, J., denied the plaintiffs' motion for summary disposition and granted the defendants' motions for summary disposition, deciding that the zoning board's grant of the variance was supported by competent, material, and substantial evidence and did not represent an abuse of the zoning board's discretion and that injunctive relief was not warranted because, although use of the easement for highway access from lot 539 was technically a misuse of the easement, there existed no substantial and irreparable injury to the plaintiffs. The court also denied a motion by the Brulés for sanctions against the plaintiffs pursuant to MCR 2.114 and a motion by the plaintiffs to compel discovery against the township. The plaintiffs were granted leave to file two appeals and the Brulés cross appealed the denial of their motion for sanctions. The appeals were consolidated.

The Court of Appeals *held*:

1. The record of the proceedings before the zoning board was adequate to permit judicial review. The plaintiffs cited no authority to support their contention that a verbatim transcript of those proceedings was required. The plaintiffs could not properly depose zoning board members to supplement what the plaintiffs claim is an inadequate record inasmuch as the proper remedy for such inadequacy is a remand for further proceedings before the zoning board.

2. By failing to cite supporting authority, the plaintiffs have waived appellate review of their claim that the zoning board lacked authority to waive variance application requirements.

3. The plaintiffs were not prejudiced by omissions in the Brulés' application for a zoning variance or by additional data presented at the zoning board hearing. The plaintiffs' claim that they were given inadequate notice of the variance request is without merit.

4. The trial court erred in permitting the Brulés to use the easement on the plaintiffs' lot for highway access from lot 539 when the easement was granted for highway access from lot 341 only. Once granted, an easement cannot be modified by either party unilaterally. The owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden. Where there was no easement by grant, reservation, way of necessity, or prescription, the burden on the servient estate cannot be extended to an additional parcel.

5. The trial court abused its discretion in denying injunctive relief to the plaintiffs. The Brulés' use of the easement to benefit lot 539 would constitute a continuing trespass for which injunctive relief is the appropriate remedy in view of the difficulty in determining damages as an alternative remedy.

6. The trial court did not clearly err in denying the Brulés' motion for sanctions against the plaintiffs pursuant to MCR 2.114 in view of the fact that the plaintiffs' claim is meritorious.

Affirmed in part, reversed in part, and remanded.

1. EASEMENTS — AGREEMENTS — UNILATERAL MODIFICATION.

An easement, once granted, cannot be modified by either party unilaterally, and the holder of the easement cannot materially increase the burden of it upon the servient tenement or impose thereon a new and additional burden.

2. EASEMENTS — MISUSE OF EASEMENTS — TRESPASS — INJUNCTIONS.

Activities by an easement holder that go beyond the reasonable exercise of the use permitted under the easement may constitute a trespass against the owner of the servient estate, for which trespass injunctive relief may be appropriate where measuring damages as an alternative remedy would be difficult.

*Charles E. Martell, P.C.* (by *Rachel G. Corwin*), for Frederic H. and Lois K. Schadewald.

*Reed, Stover & O'Connor, P.C.* (by *Cynthia P. Ortega*), for Phillippe Y. and Sharon J. Brulé.

*Ford, Kriekard, Domeny & Byrne, P.C.* (by *James R. Shinar*), and *Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *Craig A. Rolfe*), for Ross Township.

Before: YOUNG, P.J., and DOCTOROFF and CAVANAGH, JJ.

CAVANAGH, J. In Docket No. 177495, plaintiffs Frederic H. and Lois K. Schadewald appeal by leave granted the trial court order denying their motion for summary disposition and granting defendants Phillipe and Sharon Brulés' and Ross Township's motions for summary disposition pursuant to MCR 2.116(C)(10). In Docket No. 187143, plaintiffs appeal by leave granted, raising additional issues regarding the trial court order. Defendants Phillippe and Sharon Brulé have cross appealed the trial court's denial of their motion for sanctions. We affirm in part, reverse in part, and remand for further proceedings.

In 1951, Carl and Margaret Bauserman purchased a tract of land in Ross Township. In 1961, the Bausermans divided the property into two lots and sold the northern lot to plaintiffs. The Bausermans retained the southern tract, referred to as lot 341. Because lot 341 was landlocked, the Bausermans created a twenty-foot easement across the western edge of plaintiffs' property, connecting lot 341 to a right of way that provided access to a public highway. Lot 341 changed hands several times before it was purchased by the Brulés in 1984. In 1989, the Brulés purchased lot 539 from the Jennings family. Lot 539 consists of an additional acre of land adjacent to the western borders of lot 341 and plaintiffs' lot. For clarification, a diagram of the property is provided.

This diagram is included in this opinion only to provide clarity with respect to the general layout of the land in question and the parcels contained therein. The boundary lines in the diagram are not precisely accurate, nor are they to scale.

Although there is a two-car garage attached to the Brulés' house, it proved too small for their needs. In 1990, the Brulés applied for a permit to build an additional garage on lot 539. The Brulés' application was denied, however, because a zoning ordinance prohibited the construction of a building on a parcel of land with less than two hundred feet of frontage on a public roadway. On April 26, 1993, the Brulés applied to the Ross Township Board of Zoning Appeals for a variance on the basis of practical difficulties. These difficulties included the facts that the township ordinance prohibited placement of an accessory building in their front yard, the steep terrain on the side of their house prevented locating the garage there, and placement on the Gull Creek side was hampered by the existence of a septic system and the fact that the structure would impair the adjacent property owners' view. Moreover, the Brulés asserted that although lot 539 actually adjoins the right of way, an extremely steep grade makes development impossible.

The Brulés' application was scheduled to be discussed at the board's public meeting on July 6, 1993. Plaintiffs sent the board a letter objecting to the issuance of a variance and requesting that discussion be postponed until the board's next meeting, because they would be out of the state on that date. Plaintiffs' request was denied. After addressing the Brulés' application at the July 6, 1993, meeting, the board unanimously approved the variance on the condition that the Brulés officially join lots 341 and 539 and move the centerline of their garage south so that it coincided with a hypothetical westward extension of the property line between lot 341 and plaintiffs' lot.

On July 14, 1993, plaintiffs filed a complaint in the trial court against the Brulés and Ross Township. Plaintiffs claimed that the board erred in granting the variance and that the effect of the grant of the variance was an unconstitutional taking of their property. Plaintiffs sought to enjoin use of the easement on plaintiffs' property to provide the Brulés with access to lot 539. The trial court issued a temporary restraining order. Plaintiffs subsequently sought to compel discovery and depose various board members regarding the July 6, 1993, meeting. Defendants objected that plaintiffs were improperly attempting to introduce evidence outside the record, although the township agreed to provide plaintiffs with the documents that the board had considered at the meeting. On September 28, 1993, the trial court dissolved the temporary restraining order, but warned the Brulés that they proceeded at their own risk in constructing a garage on lot 539. Subsequently, the Brulés built a garage on lot 539.

On April 6, 1994, the Brulés moved for summary disposition pursuant to MCR 2.116(C)(10) and for sanctions pursuant to MCR 2.114. On May 9, 1994, plaintiffs also moved for summary disposition pursuant to MCR 2.116(C)(10), and on May 10, 1994, Ross Township did likewise. On June 3, 1994, a hearing was held on the parties' motions.

On June 27, 1994, the trial court rendered a bench opinion. The court held that the board's decision to grant the Brulés a variance was supported by competent, material, and substantial evidence and represented a reasonable exercise of the board's discretion. The court conceded that the Brulés' use of the easement to reach lot 539 constituted "a technical

misuse of the easement." However, relying on two out-of-state cases, the court held that plaintiffs were not entitled to injunctive relief because there was no evidence of an increase in the burden on their property and, therefore, there existed no substantial and irreparable injury warranting injunctive relief. The trial court then granted defendants' motions for summary disposition and denied plaintiffs' motions for summary disposition and to compel discovery. In addition, the court denied the Brulés' motion for sanctions. The order incorporating these decisions was entered on July 11, 1994.

In Docket No. 177495, plaintiffs applied for leave to appeal the trial court order affirming the board's grant of a variance to the Brulés. On September 26, 1994, this Court granted plaintiffs' motion. In Docket No. 187143, plaintiffs filed a delayed application for leave to appeal additional issues relating to the substantive aspects of the case. The Brulés cross appealed, challenging the trial court's denial of their motion for sanctions. On November 14, 1995, this Court granted plaintiffs' delayed application for leave to appeal and ordered that the appeals be consolidated.

I

Plaintiffs first claim that the record of the July 6, 1993, hearing before the board was inadequate because the proceedings were neither transcribed nor tape-recorded. Plaintiffs contend that the trial court should have allowed them to question board members and other involved parties regarding what transpired at the hearing.

Following the hearing on plaintiffs' motion to compel discovery, the trial court directed the township to provide additional documents to plaintiffs to complete the record. On February 11, 1994, the township filed a "Revised Certificate of Record of July 6, 1993 Ross Township Zoning Board of Appeals Meeting." This consisted of the Brulés' application for the variance; five pages of site and building diagrams submitted by the Brulés; an affidavit of the township supervisor, with attachments; plaintiffs' June 30, 1993, letter to the board, with attachments; the Brulés' revised site diagram; several miscellaneous documents; the township's zoning ordinance; and the approved minutes of the July 6, 1993, meeting.

MCL 125.289; MSA 5.2963(19) provides that a township zoning appeals board "shall maintain a record of its proceedings which shall be filed in the office of the township clerk and shall be a public record." Section 6.6 of the township's zoning ordinance requires a written record of the proceedings of each hearing before the board that must include "a summary of the proceedings, findings of fact, conclusions and the formal determination." The function of the trial court when reviewing the board's grant of a variance is to determine whether the decision was supported by competent, material, and substantial evidence on the whole record. MCL 125.293a(1); MSA 5.2963(23a)(1).

Plaintiffs' complaints regarding the sufficiency of the record, and in particular the record of the board's decision-making process, are not entirely unjustified. However, when viewed in light of the above standards, we conclude that the record is minimally adequate to permit judicial review. Plaintiffs have cited no authority to support their contention that a verba-

tim transcript of the proceedings must be made. Regarding plaintiffs' request to depose township officials about the basis for their decision, if the record of the board's proceedings is inadequate, the proper remedy is to remand for further proceedings before the board, not to depose board members. See MCL 125.293a(2); MSA 5.2963(23a)(2). Furthermore, plaintiffs' argument that some of the information presented to the board was inaccurate does not render the record inadequate or the board's decision invalid.

II

Plaintiffs next question whether the board had the authority to waive the variance application requirements set forth in the township zoning ordinance. However, plaintiffs cite no authority in support of their argument. This Court will not search for authority to support a party's position. *Weiss v Hodge (After Remand)*, 223 Mich App 620, 637; 567 NW2d 468 (1997). We therefore decline to review the issue.

III

Next, plaintiffs contend that the board abused its discretion in considering the Brulés' application for a variance because the application did not meet the requirements of the zoning ordinance. Plaintiffs maintain that they received inadequate notice of the variance request because the application did not mention the Brulés' residential lot or include any claims with regard to it.

We are unable to discern how plaintiffs were prejudiced by such omissions in the application. Although at the July 6, 1993, hearing the Brulés sub-

mitted more detailed drawings of the proposed struc-
ture, there is no prohibition against the board
obtaining additional information on which to base its
decision at a public hearing. Moreover, the substance
of the Brulés' application was not altered by the addi-
tional data presented at the hearing. Plaintiffs had
previously submitted their own map of the area,
including the relationship of the proposed structure
to their home. Plaintiffs did not exercise their right to
send an agent to represent them at the hearing. See
MCL 125.293; MSA 5.2963(23). Accordingly, we find
no error requiring reversal.

### IV

#### A

Plaintiffs next argue that the trial court erred in per-
mitting the Brulés to use the easement across plain-
tiffs' lot to access lot 539. This is a question of law
that we review de novo on appeal. *Schroeder v
Detroit*, 221 Mich App 364, 366; 561 NW2d 497 (1997).

An easement is the right to use the land of another
for a specified purpose. *Bowen v Buck & Fur Hunt-
ing Club*, 217 Mich App 191, 192; 550 NW2d 850
(1996). An easement does not displace the general
possession of the land by its owner, but merely grants
the holder of the easement qualified possession only
to the extent necessary for enjoyment of the rights
conferred by the easement. *Morrill v Mackman*, 24
Mich 279, 284 (1872).

An appurtenant easement, which is the type of
easement at issue in this case, attaches to the land
and is incapable of existence separate and apart from
the particular land to which it is annexed. See
*McClintic-Marshall Co v Ford Motor Co*, 254 Mich

305, 318-319; 236 NW 792 (1931). The land served or benefited by an appurtenant easement is called the dominant tenement. The land burdened by an appurtenant easement is called the servient tenement. *Rusk v Grande*, 332 Mich 665, 669; 52 NW2d 548 (1952). In the present case, plaintiffs' lot is the servient tenement and lot 341 is the dominant tenement.

Once granted, an easement cannot be modified by either party unilaterally. *Douglas v Jordan*, 232 Mich 283, 287; 205 NW 52 (1925); *Tittiger v Johnson*, 103 Mich App 437, 443; 303 NW2d 26 (1981). The owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden. *Delaney v Pond*, 350 Mich 685, 687; 86 NW2d 816 (1957).

The trial court relied on *Brown v Voss*, 105 Wash 2d 366; 715 P2d 514 (1986), and *Wetmore v Ladies of Loretto*, 73 Ill App 2d 454; 220 NE2d 491 (1966). In both *Brown* and *Wetmore*, the courts held that misuse of an easement to benefit an added parcel of land may be overlooked when the increased burden is insubstantial. See *Brown, supra* at 372-373; *Wetmore, supra* at 466. However, while that may be the rule in other states, it is not the rule in Michigan.

In *Barbaresos v Casaszar*, 325 Mich 1; 37 NW2d 689 (1949), an easement existed for the benefit of lots B, C, and D. The plaintiffs owned lot B and an adjacent parcel, lot A. The defendant, who owned lot C, recognized that the plaintiffs had an easement appurtenant to lot B, but objected to the plaintiffs' use of the easement to benefit lot A. The Supreme Court held that where there was no easement by grant, reservation, way of necessity, or prescription, the burden on the servient estate could not be extended to an

additional parcel. *Id.* at 7-8. The Court stated that
" ' "the servient estate is not to be burdened to a
greater extent than was contemplated at the time of
the creation of the easement." ' " *Id.* at 8, quoting
*Bang v Forman*, 244 Mich 571, 574; 222 NW 96 (1928),
quoting *Brossart v Corlett*, 27 Iowa 288 (1869).

A similar set of facts was presented in *Soergel v
Preston*, 141 Mich App 585; 367 NW2d 366 (1985). The
defendants owned parcel B, which was the dominant
estate with regard to an appurtenant easement for the
installation of utility lines across parcel A, which was
owned by the plaintiffs. The defendants also owned
parcel C, which adjoined parcel B. The defendants'
residence was on parcel C. Parcel B was unoccupied.
*Id.* at 587. Controversy erupted when the defendants,
over the plaintiffs' objections, installed a sewer line
across parcels A and B to serve their house on parcel
C.

This Court rejected the defendants' argument that
the installation of the sewer line to parcel C did not
materially increase the burden on parcel A. The Court
explained:

> [T]he initial question in this case is whether parcel C has
> any right to an easement. Nothing in the easement agree-
> ment entitles the owners of parcel C to benefit from the
> easement appurtenant to parcel B. The question of whether
> parcel C's use of the easement constitutes a material
> increase would not arise until the future owners of parcel B
> decided to take advantage of· the easement as well.
> Although defendants presently own both parcel B and par-
> cel C, this could change in the future. The fact that only one
> parcel is benefiting from the easement, as contemplated by
> the easement agreement, is beside the point, because that is
> not the parcel for which the easement was intended. [*Id.* at
> 589.]

The *Soergel* Court upheld injunctive relief requiring the removal of the sewer line.

The Brulés argue that they have not increased the burden on the easement. They point out that they are driving the same cars as before over the easement, but after traversing plaintiffs' property they are turning right instead of left. However, the pertinent question is not whether the burden on plaintiffs' property has substantially increased, but rather whether lot 539 has any right to an easement over plaintiffs' property. See *Barbaresos, supra* at 7-8; *Soergel, supra* at 589.

The record is devoid of any evidence that lot 539 has the right to an easement over plaintiffs' property, and in fact the Brulés do not even claim that lot 539, standing by itself, is legally entitled to benefit from the easement.[1] The rights of an easement holder are defined by the easement agreement. *Great Lakes Gas Transmission Co v MacDonald*, 193 Mich App 571, 575; 485 NW2d 129 (1992). In the present case, the deed by which the Bausermans conveyed the northern portion of their property to plaintiffs states that

---

[1] The Supreme Court has stated that the servient estate is not to be burdened to a greater extent than was contemplated at the time of the creation of the easement. *Barbaresos, supra.* Defendants have submitted the affidavit of Carl Bauserman, in which he stated that when he created the easement he intended it to be used as reasonably necessary and convenient for the dominant parcel, including such uses as parking vehicles even if the garage were located on adjacent land. However, this does not demonstrate that Bauserman specifically intended to extend the easement to lot 539. In the deed conveying the northern portion of his property to plaintiffs, no mention is made of the easement benefiting any other parcels. On the facts in the record, it is unlikely that the Bausermans considered extending the easement to benefit lot 539, because at the time the easement was created, lot 539 was owned by Edmund and Dorothy Jennings as a small part of a large parcel of land that had adequate access to the public highway.

the grant was "[s]ubject to a right of way over the Westerly portion thereof to connect with the right-of-way to M89."[2] The document does not mention any other parcel. Thus, as a matter of law, the easement does not extend to lot 539.

Even if the burden on plaintiffs' property were at issue, the Brulés have not established that relief is unwarranted. The trial court found that travel over the easement was not materially increased by the use of the new garage. However, there is no empirical proof in the record that, despite the joinder of lots 341 and 539, an increased burden on plaintiffs' servient estate could not arise in the future. See *Soergel, supra* at 589. Contrary to Michigan law, the approach followed by the trial court affords the owner of the dominant estate carte blanche to unilaterally extend an easement to other property as long as he is careful not to increase the present burden on the servient estate. See *Douglas, supra; Tittiger, supra.* Accordingly, the trial court erred in denying relief to plaintiffs because there was no evidence of an increase in the burden on their property.

B

Plaintiffs assert that the trial court erred in denying their request to permanently enjoin the Brulés from using the easement to reach lot 539. We review a trial court's decision whether to grant injunctive relief for an abuse of discretion. *Senior Accountants, Analysts*

---

[2] Although the specific language of the easement apparently refers to a twenty-foot strip at the western end of plaintiffs' property, because of both the slope of that area and the fact that it is covered with vegetation, the owners of lot 341 have always used a separate eleven-foot strip to gain access to their property.

& *Appraisers Ass'n v Detroit,* 218 Mich App 263, 269; 553 NW2d 679 (1996).

When an injury is irreparable, the interference is of a permanent or continuous character, or the remedy at law will not afford adequate relief, a bill for an injunction is an appropriate remedy. *Soergel, supra* at 589-590. Activities by the owner of the dominant estate that go beyond the reasonable exercise of the use granted by the easement may constitute a trespass to the owner of the servient estate. *Embrey v Weissman,* 74 Mich App 138, 143; 253 NW2d 687 (1977). In the present case, the Brulés' use of the easement to benefit lot 539 would constitute a continuing trespass for which damages would be difficult to measure. Accordingly, injunctive relief is the appropriate remedy, and the trial court abused its discretion in denying plaintiffs' request for an injunction. See *Brown, supra* at 374 (Dore, J., dissenting). We therefore remand this matter to the trial court with instructions to enter an injunction prohibiting the Brulés from using the easement for the benefit of lot 539.

We recognize that our decision places hardship on the Brulés.[3] However, they knew or should have known when they purchased lot 539 that the easement across plaintiffs' property did not extend to that

---

[3] As the *Soergel* panel noted, Michigan courts have granted injunctions in easement cases even harsher than that ordered in the instant case. See *Soergel, supra* at 589-590 (requiring the disconnection of water and sewer lines); *Longton v Stedman,* 182 Mich 405, 414-416; 148 NW 738 (1914) (ordering the defendants to tear down a brick building that obstructed the plaintiff's easement). Michigan Courts have also upheld stringent relief in other property cases. See, e.g., *Webb v Smith (After Second Remand),* 224 Mich App 203, 214; 568 NW2d 378 (1997) (requiring the defendants to demolish their house).

parcel. Furthermore, they went ahead with the construction of the garage on lot 539, although they were expressly warned that they did so at their own risk. Nevertheless, the Brulés are not without options: despite the difficulty, they can develop the part of lot 539 adjoining the right of way;[4] they can purchase additional land having easy access to the right of way or a public road; or they can negotiate with plaintiffs to obtain the right to use the easement to gain access to lot 539.

V

On cross appeal, the Brulés argue that the trial court erred in denying their motion for sanctions pursuant to MCR 2.114. The imposition of a sanction under MCR 2.114 is mandatory upon the finding that a pleading was signed in violation of the court rule or a frivolous action or defense had been pleaded. We review a trial court's decision regarding the imposition of a sanction to determine if it is clearly erroneous. The trial court's decision is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Contel Systems Corp v Gores*, 183 Mich App 706, 710-711; 455 NW2d 398 (1990).

---

[4] The Brulés would not be entitled to an easement by necessity over plaintiffs' property because lot 539 is not landlocked as a result of the split from plaintiffs' lot, but rather by the split from the Jennings' parcel. See *Goodman v Brenner*, 219 Mich 55, 59; 188 NW 377 (1922). However, even if lot 539 had been created by splitting it from plaintiffs' lot, an easement of necessity would still not have arisen because lot 539 adjoins the right of way. The lack of any access except over a steep grade is insufficient to establish an easement by necessity. *Waubun Beach Ass'n v Wilson*, 274 Mich 598, 611-613; 265 NW 474 (1936).

The Brulés contend that plaintiffs' pleading was not well-grounded in fact because plaintiffs presented no evidence of an increased burden on their servient estate attributable to the Brulés' use of the easement for access to lot 539. However, plaintiffs presented sufficient evidence to demonstrate that, contrary to Michigan law, the Brulés were unilaterally attempting to expand the easement. See *Douglas, supra; Tittiger, supra.* Indeed, as demonstrated by our discussion of the previous issue, plaintiffs' claim was meritorious. Accordingly, the trial court's denial of the motion for sanctions was not clearly erroneous.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.